## THE F. A. VERDON, Inc.

## THE ALL AMERICAN.

## THE MAGNOLIA.

### Nos. A. 16025, A. 16076.

District Court, E. D. New York.
March 26, 1941.

Foley & Martin, of New York City (Christopher E. Heckman, of New York City, of counsel), for the Verdon.

Pyne & Lynch, of New York City (Anthony V. Lynch, Jr., of New York City, of counsel), for Texas Co.

GALSTON, District Judge.

On January 5, 1940, at about 7:30 P. M. the tanker F. A. Verdon, loaded with a cargo of kerosene departed from the Standard Oil piers of Constable Hook on the Bayonne side of Kill van Kull on her way to New Haven, Connecticut. While proceeding through the Kill van Kull, and at a point somewhat west of Buoy 2–A, she observed the All American with a light barge, Magnolia, on her starboard side, bound westward to Kill van Kull. Despite exchange of signals, the Verdon and the Magnolia collided, the bow of the Magnolia striking the starboard side of the Verdon about seventy feet aft of the bow.

On behalf of the Verdon it is claimed that the collision arose through the sole fault of the All American; that when the vessels were in sight of each other they were in position to pass starboard to starboard; that the Verdon blew a blast of two whistles for such a passing but that the All American answered with a one-whistle signal. It is urged that if the All American believed danger attended a starboard to starboard passage, she should have responded not with a one-whistle signal but with an alarm blast. Following the response of the one-whistle signal, the Verdon sounded an alarm and then repeated her two-whistle signal. It is contended that the All American then replied with a two-whistle signal but that she did not navigate in accordance with such signal.

On the other hand, the story of the All American is that the Verdon gave a one-blast signal, to which the All American responded with a one-blast. The All American ascribes the fault of the collision to the Verdon, contending that each vessel, when in the narrow channel, proceeded close to its starboard side of the bank and thus was in position to pass port to port, but that instead of holding to her course the Verdon swung to port, shutting out her red light and showing her green light, then blew alarm signals and a one-blast signal. It is asserted that as the Verdon came on the All American blew backing signals and put her engines full speed astern. Fault laid to the Verdon is failure to stop or back; in maintaining her speed and in attempting to cross the bow of the All American.

The captain and mate of the Verdon tell a fairly consistent story. As the Verdon backed from her pier into the stream and straightened up on the starboard side of the channel the navigation was in charge of the second mate, with the captain remaining in the wheel-house beside him. The mate gave a two-whistle signal. They observed the green light of an on-coming vessel off the starboard bow. Besides the green light, the white running lights were observed on both the barge and the tug boat. At that time the tow, which proved to be the All American and the Magnolia, was over near the Staten Island shore. On hearing the All American blow a one-whistle response the captain gave the danger signal and blew two whistles, which were answered by two whistles from the All American. When the danger signal was given the All American showed then the red and the green

lights. At that time the captain of the Verdon realized that if there were no change in course there was bound to be a collision. Noting that the All American had not changed its course the Verdon hauled to port about a point and tried to head away from the All American, and then backed to starboard about a point to get straight, "to make it more of a glancing blow" if any.

When the All American was first observed the Verdon was about one-quarter of a mile west of Buoy 2–A. At that time the All American appeared to be opposite the buoy and between the buoy and the Staten Island shore. According to those on the Verdon, the collision occurred westward of the buoy, a distance of about from 300 to 400 feet, and somewhat to the left of the middle of the channel, i. e., to the north of the middle of the channel. Thus the Verdon, which originally had started about 200 feet off the Staten Island shore, had gone further to the center of the channel by about a distance of 200 to 250 feet. It was suggested that the Verdon should have reversed her engines at the time she sounded her danger signal. The captain explained that if he had reversed his engines there would have been a head-on collision with the Magnolia. In reversing, the bow of the Verdon would fall off to starboard. The ebb tide setting towards the Staten Island shore would have added to that starboard movement of the bow.

On the other hand the testimony of the All American witnesses is far from satisfactory. When Johnson, its captain, saw the Verdon it was west of the red light, near the Staten Island shore, showing only its red light. He heard a one-whistle signal which he answered with a one-whistle signal. About a half mile separated the vessels at that time. After the exchange of the one-whistle signals and when the All American got abreast of the Verdon, "she came right straight across my bow, just before we hit," said Captain Johnson, adding that after the change of course the Verdon sounded four whistles, the danger signal, and he believed that she then blew a one-whistle signal. The All American blew three short blasts and was going full speed astern. Johnson places the point of collision east of the red buoy. He admitted that at the time of the collision he was not making stern way.

Johnson was not comfortable when confronted with testimony which he had given before the local inspectors. Most incredible, however, was his description of the Verdon's change of course, an alleged shift of substantially 90°.

There was a strong north-west wind prevailing, which blew across towards the Staten Island shore. The course that he mapped on the chart, indicating how he proceeded from Robbins Reef to a point off the Jersey shore, was practically due west. It seems most reasonable to believe that running such a course against a north-west wind of about 30 miles an hour, and bucking an ebb tide, would have set the All American over towards the Staten Island shore as those on the Verdon testified.

Questioned before the local inspectors about the exchange of whistles he said that he answered the Verdon one-whistle signal; then the Verdon blew an alarm, "after we pretty near hit". At the trial he admitted that that was an error and that the alarm was sounded by the Verdon "just a little before we hit". Before the inspectors he said that it was the All American which first blew the next signal. He complained that the stenographer had incorrectly reported his testimony in respect to exchange of whistles.

Larsen, a deck hand on the tug All American, was stationed on the Magnolia. He testified about the point of collision and disagreed with his captain in defining it. His testimony too cannot be reconciled with testimony which he gave before the local inspectors.

From the testimony I must conclude that when the Verdon first observed the All American the vessels were in position to pass starboard to starboard. The situation was made difficult for the Verdon by the one-whistle response to her starboard passing signal. It is true that ordinarily on the exchange, if there is no agreement, prudent navigation requires the vessels to stop their engines. The New York, 175 U.S. 187, 20 S.Ct. 67, 44 L.Ed. 126. But the failure of the Verdon to stop and reverse her engines was explained by her captain, as stated hereinbefore. The Verdon in the circumstances made so difficult for her by the navigation of the All American, made the best maneuver that her mariner thought was possible. He attempted to escape collision by swinging clear. See Construction Aggregates Co. v. Long Island R. Co., 2 Cir., 105 F.2d 1009, 1012. In that case, after citing the emergency rule for backing as laid down in The New York, supra, the

court said: "Nevertheless, safety is always the overriding consideration, and there may be situations in which it is safer to go on. The Chicago had a float on her port hand, and if she had backed, its bow would have been thrown to starboard towards the Sandmaster. Although this would have exposed less of her length to collision, it would have lengthened the time during which she would be crossing the Sandmaster's course, and by shortening the time before the vessels met, if they did meet, have cut down the chance of manoeuvering. The actual choice probably favored safety quoad the Sandmaster; but the important thing was that the Patchogue was coming down behind the Chicago only 500 feet away, and that backing would have stopped her right in the Patchogue's path. The Chicago was faced with an emergency inexcusably thrust upon her, from which she could not free herself in the ordinary way, and we are not disposed to question her decision made under such stress."

The Verdon is entitled to a decree and the cross-libel of the All American will be dismissed.